AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

**SOUTHERN** DISTRICT OF **CALIFORNIA**

FILED
08 JUL 28 AM 10:06
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: FC DEPUTY

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**Premises known as:**

See attachment "A"

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: '08 MJ 2270

I _____Jeffrey Pryor_____ being duly sworn depose and say:

I am a(n) __Special Agent, U.S. Immigration and Customs Enforcement__ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

See attachment "A" thru "B"

In the __SOUTHERN__ District of __CALIFORNIA__
there is now concealed a certain person or property, namely (describe the person or property to be seized)
   Attachment A

Which is: (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
   **Fruits, evidence, and instrumentalities of crimes against the United States**

Concerning a violation of Title __8__ United States code, Section(s) __1324__
The facts to support a finding of Probable Cause are as follows:
   See Attached Affadavit

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

Date __JUL 25 2008__   at   San Diego, California
                                City and State

LEO S. PAPAS
U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer    Signature of Judicial Officer

# AFFIDAVIT

State of California    )
                       )   ss
County of San Diego  )

I, Jeffrey Pryor, being duly sworn, hereby depose and say:

## A.   EXPERIENCE AND TRAINING

1.   I am a Special Agent (SA) of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). I am a Federal Law Enforcement Officer within the meaning of Rule 41 (a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer since September 2001. I am authorized by Rule 41 (a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants pursuant to Rule 4 (a) and (c)(1), Federal Rules of Criminal Procedure.

2.   I have experience and have received training with respect to conducting investigations of civil and criminal violation of Titles 8, 18, 19, 21, 26, 31, and 46 of the United States Code. My training and experience includes investigations of human trafficking, alien smuggling, financial fraud, money laundering, counterfeit documents, firearms and narcotics smuggling and interdiction of the same.

3.   Since May 2007, I have been assigned to the Human Trafficking Division for the Office of the Deputy Special Agent in Charge, San Ysidro, California. The Human Trafficking Division is tasked with the responsibility of investigating, arresting, and prosecuting alien smuggling organizations that utilize the Southern District of California as an operational corridor. These investigations are complex criminal investigations of mid to high-level criminal smuggling organizations. In the course of my

duties, I investigate and prepare for prosecution, cases against persons involved in the inducement of illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation and harboring of undocumented aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States.

2. Prior to being assigned to the Human Trafficking Division, between September 2001 and May 2007, I was a Border Patrol Agent with the United States Border Patrol in San Diego, California. During my career with the U.S Border Patrol, I was detailed to the San Diego Sector Intelligence Department and the Federal Bureau of Investigation's Human Trafficking group. While employed by the U.S. Border Patrol and Immigration and Customs Enforcement, I participated in and/or lead several smuggling related investigations that resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments and convictions of persons for alien smuggling including guides, drivers, recruiters, arrangers, document providers, and top-level managers.

3. Throughout my career, I have received training and conferred with other Special Agents, Border Patrol Agents, narcotics investigators, law enforcement professionals and others (including suspects, defendants and informants) in the operation of cellular and digital telephones and other electronic devices used by alien smugglers in the normal course of their illicit activities. During the course of alien smuggling investigations and training, I have learned that alien smugglers and others involved in such criminal conspiracies use digital and cellular telephones, in part, to increase their

mobility, and to provide themselves with instant access to telephone calls and voice messages. Alien smugglers also use digital and cellular telephones, in part, because of their belief in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their digital and cellular telephones. In addition, alien smugglers and others involved in such criminal conspiracies use digital and cellular telephones because they provide greater insulation and protection against court-ordered wiretaps.

4. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support issuing a search warrant, it does not include all the facts that have been learned during the course of investigation. When the contents of documents or statements of others are reported herein, they are reported in substance and part unless otherwise indicated.

### B.   LOCATION TO BE SEARCHED

5. I believe that I have probable cause to search the subscriber/toll records, stored memory, active digital display, and all other electronic features of one black Motorola cellular telephone (Serial number: KAUF0033AB) seized as evidence following the arrest of Isaac Espinoza for violation of Title 8 USC 1324 Alien Smuggling; One gray Motorola cellular telephone (Serial number: SJUG2926AA) seized as evidence following the arrest of Robert Barraza for violation of Title 8 USC 1324; one black Motorola

cellular telephone (Serial number: 364YEA4TX0) seized as evidence following the arrest of Isaac Espinoza for violation of Title 8 USC 1324; one black Cricket UT Starcom cellular telephone (Serial number: 7440317614) seized as evidence following the arrest of Robert Barraza for violation of Title 8 USC 1324; one gray Motorola Boost cellular telephone, Model i425 (Serial number: 364VJAFV8Z) seized as evidence following the arrest of Cuauhtlahtouac Hernandez for violation of Title 8 USC 1324; one black Motorola cellular telephone, Model i455 (Serial number: 364V6N8GHK) seized as evidence following the arrest of Dominick Smith for violation of Title 8 USC 1324; one black Motorola cellular telephone, Model L7c (Serial number: 02015249412) seized as evidence following the arrest of Dominick Smith for violation of Title 8 USC 1324. Each of the aforementioned cellular telephones were seized following the arrest of the four co-defendants on April 6, 2008 on suspicion of violation of Title 8 United States Code 1324.

6. The specified telephones are currently in the possession of The United States Border Patrol located at San Diego Sector Asset Forfeiture Office.

C.   **ITEMS TO BE SEIZED**

7. Based upon my experience and training, and all of the facts and opinions set forth in this affidavit, I believe that the following items will be found in the location to be searched described in paragraph 5, supra:

    a. the telephone number and name/identity assigned to the telephone;

    b. telephone numbers, names and identities stored in the directory;

    c. telephone numbers dialed from the telephone;

    d. all other telephone numbers stored in the telephone's memory (including, but not limited to: received, missed and incomplete calls);

  e. any other electronic information in the stored memory and/or accessed by the telephone (including, but not limited to: text messages, voice messages and memoranda);

  f. any electronic photographs, voice recordings, voice notes, calendar information; and

  g. subscriber information.

which evidences the existence of a conspiracy to engage in alien smuggling, a violation of Title 8 United States Code 1324.

### D.  DIGITAL DATA SEARCH PROTOCOL

8.  Special Agents from the ICE Human Trafficking Division will deliver the seized items identified above to the San Diego ICE Digital Forensics Unit (DFU) for analysis. Because digital mobile telephones do not have hard drives and do not store information in a volatile memory, they must be activated by a Digital Forensic Agents (DFA) at the DFU. The DFA will attempt to determine any necessary personal identification numbers required to activate the telephones in order to retrieve the data stored therein. Examinations may be delayed in the absence of an appropriate charging device for the individual telephones. The DFA may be required to manually examine the telephones and their respective functions and record their findings utilizing digital photography. Because this process is time and labor intensive, and dependent upon the workload and availability of certified DFA's, the examination process may require several weeks.

### E. STATEMENT OF FACTS

  Affiant's belief that evidence of criminal activity will be found within the above listed items is supported by the following known facts.

9. On April 6th, 2008, Border Patrol agents assigned to the San Diego Sector East County Abatement Team (ECAT) initiated surveillance on two vehicles suspected of attempting to smuggle undocumented aliens into the United States in violation of law. At approximately 8:50 p.m., Border Patrol Agents observed a Ford Escort and a Dodge Ram truck traveling eastbound on Interstate 8 near Alpine, California. The agents observed that the vehicles were traveling in tandem, as they observed the second vehicle (Dodge) follow in concert with the lead vehicle (Ford) when making lane changes, turns and speed adjustments. Agents observed both vehicles travel to the Viejas Casino near Alpine, California. Agents subsequently observed the four occupants of the vehicles co-mingle and converse prior to re-entering their respective vehicles.

10. Agents maintained surveillance on the vehicles as they again traveled in concert eastbound towards Jacumba, California. Prior to arriving at Jacumba, California, the Dodge Ram accelerated away from the Ford. Agents were unable to safely maintain surveillance on the Dodge Ram and subsequently lost visual contact of the truck. Simultaneously, the Ford Escort began speeding up and slowing down. Agents maintained surveillance on the Ford as it exited Interstate 8 at Mountain Springs Road and immediately re-entered Interstate 8 westbound. The Ford Escort then stopped briefly at a gas station in Jacumba, California, prior to traveling to the Golden Acorn Casino. It is the experience of the affiant, as well as the experience of the Border Patrol agents involved in the enforcement action, that the behaviors of the Dodge Ram and the Ford Escort were consistent with tactics employed by alien smuggling organizations when attempting to identify law enforcement agents working in the area they are seeking to conduct their illicit activities. Specifically, the tactic of having two vehicles engaged in

the picking up and transporting of undocumented aliens. Alien smuggling organizations commonly have a lead or scout vehicle (Ford Escort) travel to the pre-arranged alien load up spots to show the second vehicle or load vehicle (Dodge Ram) the area where the undocumented aliens are to be picked up. Additionally, the scout vehicle will ensure that law enforcement is not in the area when the pick up is to occur. The scout vehicle will then routinely wait for the load vehicle to pick up the undocumented aliens at a place near the pick up location. Once the load vehicle has successfully acquired the illicit cargo, the scout vehicle resumes its duties leading the load vehicle around enforcement locations and back to a load house. It is also common for the scout vehicle and load vehicle to change speeds and separate when near the undocumented alien load pick up location to further identify any law enforcement activity.

11. Agents maintained surveillance of the Ford Escort at the Golden Acorn Casino. At approximately the same time, Border Patrol agents re-acquired the Dodge Ram, as it was stationary on the westbound shoulder of Interstate 8. As the Border Patrol agent passed the stationary Dodge Ram it re-entered the Interstate only to pause again a few hundred yards later. This area is well known by both the affiant and the agents involved with the enforcement operation as being utilized by alien smuggling organizations to pick up undocumented aliens. This location is approximately two-miles from the U.S. / Mexico international border.

12. Border Patrol agents in a marked sedan attempted to perform a vehicle stop on the Dodge Ram; however, the Dodge Ram attempted to abscond once the marked Border Patrol vehicle activated its emergency lights and siren. The driver of the vehicle, later identified as Dominick SMITH, subsequently lost control of the vehicle and crashed.

All of the occupants attempted to flee the scene but were quickly apprehended. Sixteen undocumented Mexican nationals were arrested. In addition to the undocumented aliens, Border Patrol Agents also arrested Roberto BARRAZA, who was recognized as the Dodge Ram's passenger. SMITH and BARRAZA were arrested on suspicion of violation of Title 8 USC 1324.

13. Simultaneously, Border Patrol agents approached and questioned the occupants of the Ford Escort at the Golden Acorn Casino. The driver, identified as Cuauhtlahtouac HERNANDEZ, and the passenger, identified as Isaac ESPINOZA, were subsequently arrested on suspicion of conspiracy of violation of Title 8 USC 1324.

14. Following the arrest of the four defendants, three of the sixteen undocumented aliens provided sworn statements identifying SMITH as the driver of the Dodge Ram (load vehicle) and BARRAZA as the passenger in the Dodge Ram.

15. A search conducted incident to arrest revealed seven cellular telephones between the four co-defendants. A search of two of the cellular telephones, identified as belonging to ESPINOZA (KAUF0033AB) and BARRAZA (SJUG2926AA), revealed ESPINOZA received a telephone call from BARRAZA two days prior to the arrest. Additionally, BARRAZA's telephone revealed that he called ESPINOZA at 7:39 p.m., on April 6, 2008.

16. During his post arrest statement, BARRAZA admitted that he and SMITH were following the Ford Escort prior to their arrest. Additionally, BARRAZA admitted that he and his three co-defendants agreed to smuggle the undocumented aliens.

17. On May 6th, 2008, the Grand Jury for the United States District Court, Southern District of California returned a true bill. The three count indictment, charged

each of the four co-defendants with violation of Title 8 United States Code 1324(a)(1)(A)(ii) and (v)(II).

## F. CONCLUSIONS

13. Based upon my experience and investigation in this case, I believe that there is probable cause to search each of the seven cellular telephones seized from the four defendants. The search is for evidence relating to violation of Title 8 United States Code, Section 1324, including evidence that the four co-defendants were acting in concert when engaged in the criminal act.

FURTHER AFFIANT SAYETH NAUGHT

                                                  Jeffrey Pryor
                                                  Special Agent
                                          U.S. Immigration and Customs Enforcement

SUBSCRIBED TO AND SWORN TO
Before me this 25 day of July, 2008

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

A. One black Motorola cellular telephone (Serial number: KAUF0033AB) seized as evidence following the arrest of Isaac Espinoza for violation of Title 8 USC 1324 on April 6th, 2008.

B. One gray Motorola cellular telephone (Serial number: SJUG2926AA) seized as evidence following the arrest of Robert Barraza for violation of Title 8 USC 1324 on April 6th, 2008.

C. One black Motorola cellular telephone (Serial number: 364YEA4TX0) seized as evidence following the arrest of Isaac Espinoza for violation of Title 8 USC 1324 on April 6th, 2008.

D. One black Cricket UT Starcom cellular telephone (Serial number: 7440317614) seized as evidence following the arrest of Robert Barraza for violation of Title 8 USC 1324 on April 6th, 2008.

E. One gray Motorola Boost cellular telephone, Model i425 (Serial number: 364VJAFV8Z) seized as evidence following the arrest of Cuauhtlahtouac Hernandez for violation of Title 8 USC 1324 on April 6th, 2008.

F. One black Motorola cellular telephone, Model i455 (Serial number: 364V6N8GHK) seized as evidence following the arrest of Dominick Smith for violation of Title 8 USC 1324 on April 6th, 2008.

G. One black Motorola cellular telephone, Model L7c (Serial number: 02015249412) seized as evidence following the arrest of Dominick Smith for violation of Title 8 USC 1324 on April 6th, 2008.

## ATTACHMENT B

## ITEMS TO BE SEIZED

a. the telephone number and name/identity assigned to the telephone;

b. telephone numbers, names, and identities stored in the directory;

c. telephone numbers dialed from the telephone;

d. all other telephone numbers stored in the telephone's memory (including, but not limited to: received, missed and incomplete calls);

e. any other electronic information in the stored memory and/or accessed by the telephone (including, but not limited to: text messages, voice messages, and memoranda);

f. any electronic photographs, voice recordings, voice notes, calendar information; and

g. all subscriber information